# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MUNDHER ALYAS GHAZAL,<br><br>                   Plaintiff,<br>vs.<br><br>ALBERTO GONZALES, Attorney General of the United States; MICHAEL CHERTOFF, Secretary of the Department of Homeland Security; PAUL M. PIERRE, District Director for U.S. Citizenship and Immigration Services, and San Diego District Office; and U.S. CITIZENSHIP AND IMMIGRATION SERVICES,<br><br>                   Defendants. | CASE NO. 06CV2732-LAB (NLS)<br><br>**ORDER GRANTING MOTION TO REMAND AND DISMISSING COMPLAINT**<br><br>[Dkt No. 8] |

      This matter is before the court on Defendants' Memorandum Of Law And Motion To Remand ("Motion") plaintiff Mundher Alyas Ghazal's ("Ghazal") Complaint For Writ In The Nature Of Mandamus To Compel Administrative Action ("Complaint") seeking an Order to compel Defendants to forthwith adjudicate his Application For Naturalization. Ghazal filed a Reply. Pursuant to Civil Local Rule 7.1(d)(1), the court finds the issues presented appropriate for decision on the papers and without oral argument. For the reasons discussed below, the Motion is **GRANTED** and the Complaint is **DISMISSED**.

      Ghazal, a lawful permanent resident in the United States since 1994, alleges he filed his Application For Naturalization on February 14, 2003 with the U.S. Citizenship and

Immigration Services ("USCIS"). He represents, and the government confirms, he appeared for an examination pursuant to the Application on December 12, 2003. He contends he provided all the evidence necessary for the agency to decide his Application. He represents his numerous written and in-person inquiries thereafter did not spur agency action, and as of the December 18, 2006 federal Complaint filing date, the Application remained pending. Defendants represent the results of Ghazal's law enforcement background investigation were still pending as of the March 2, 2007 filing date of their Motion. Mot. 3:15-16.

Although his Complaint relies on various jurisdictional grounds (28 U.S.C. §§ 1331 (federal question), 1361 (the Mandamus Act), 2201 (Declaratory Judgments)) and the Administrative Procedures Act,[1] the court construed Ghazal's Complaint as a request for proceeding under 8 U.S.C. § 1447(b)[2] and set a briefing schedule. His Reply to Defendants' Motion adopts that ground in addition to revisiting his original jurisdictional grounds in support of his request for this court's intervention, but he seeks the same result under all those theories:

> Based on the foregoing, if the court proceeds under 8 U.S.C. section 1447(b), Plaintiff respectfully requests that the Court **impose a deadline *for Defendants to complete Plaintiff's background check*** within 60 days or less. If the Court elects to remand Plaintiff's application to the USCIS for adjudication, Plaintiff requests that the remand include instructions for the USCIS to complete ***adjudication of the application*** **within 90 days or less**.

Reply 18:26-19:6.

/ / /

---

[1] Defendants assert, if Ghazal contends his Complaint does not arise under 8 U.S.C. § 1447(b) but rather, as originally pled, the court should dismiss the Complaint for lack of jurisdiction or for failure to state a claim under FED. R. CIV. P. 12(b). Defendants also invoke Rule 12(b)(6) and challenge with specificity this court's jurisdiction under any of the independent jurisdictional bases Ghazal recited in his Complaint as well as the merits of any due process constitutional rights claim, urging the Complaint be dismissed. Mot. pp. 8-14. Alternatively, Defendants request the matter be remanded to the USCIS for adjudication in the first instance. Mot. 2:1712-26.

[2] Section 1447(b) (emphasis added) sets a 120-day period from the date of a naturalization *examination* within which the agency must decide a naturalization application, and empowers the district court to "either determine the matter ***or remand the matter***, with appropriate instructions, to the Service to determine the matter."

The court acknowledges both sides appear to expect and desire a remand for agency action. The difference arises from Ghazal's request for a finite time frame within which the government must act definitively on his Application. The government traces in detail the investigation process prerequisite to any final agency decision on a naturalization application, and the imperative that naturalization applications not be adjudicated on the basis of incomplete information but rather await the development of a complete record through the background check processes.

The FBI and CIS are charged respectively with investigating and adjudicating naturalization applications. 8 U.S.C. § 1446(a). Defendants provide the declaration of Victoria Porto, a CIS employee whose duty, among others, is to research and monitor CIS case records. Mot. Ex. B. She substantiates the chronology of events in the processing of Ghazal's Application: Application received February 18, 2003; mandatory FBI name check initiated on March 3, 2003; request for FBI background law enforcement check initiated on August 18, 2003; interview conducted December 12, 2003; results of Ghazal's April 2, 2003 and September 28, 2004 fingerprint checks received on September 29, 2004. Porto Decl. ¶¶ 8-10, 12 ("The background investigation into Ghazal's naturalization application is on-going"). Ms. Porto avers:

> Since the terrorist attacks on the United States of September 11, 2001, the need to conduct more rigorous and thorough background checks of who are seeking immigration status, or applying for immigration benefits in the United States, has required procedures that sometime[s] result in individuals not receiving their requested documentation, or immigration benefits, as quickly as in the past. However, public safety requires the USCIS to make certain that the checks have been done before it adjudicates any application or petition, and before it issues any immigration status documents, to such persons.

Porto Decl. ¶ 10.

Congress mandated in 1997 that the FBI investigate every applicant for naturalization and that CIS await completion of those investigations before rendering a decision with respect to any applicant. *See* Pub. L. No. 105-119, Title I, Nov. 26, 1997, 111 Stat. 2448. In particular, beginning in fiscal year 1998 and thereafter, the then Immigration and

1 Naturalization Service ("INS") (now CIS) is prohibited from using any of the funds
2 appropriated or available to it "unless the [CIS] has received confirmation from the (FBI) that
3 a full criminal background check has been completed . . . ."[3] Id. Pursuant to that provision,
4 the INS amended 8 C.F.R. § 335.2 to reflect the need to delay conducting an applicant's
5 initial citizenship interview until after the FBI completes its investigations. The government
6 respondents here, and in a number of similar cases before this and other district courts,
7 acknowledge:

> Until recently, many CIS offices, including the San Diego office, had acted contrary to the regulation by conducting an initial interview of the applicant to conduct the history and English examinations before awaiting the results of the FBI investigations. Depending upon the results of the FBI investigation, CIS would re-interview the naturalization applicant. However, FBI investigations have taken much longer over the past few years, so the adjudications of naturalization applications have been increasingly delayed. Accordingly, applicants have turned to 8 U.S.C. § 1447(b).

14 Mot. 4:22-27; see Khelifa v. Chertoff, 433 F.Supp.2d 836, 841-42 (E.D.Mich. 2006); Shalabi
15 v. Gonzales, 2006 WL 3032413 (E.D. Mo. Oct. 23, 2006); Stepchuk v. Gonzales, 2006 WL
16 3361776 *2 (W.D. Wash. Nov. 17, 2006). To avoid the problem in future, apparently CIS
17 has now conformed its interview process to the regulatory timing mandate by awaiting
18 completion of the FBI background investigations -- over the timing of which CIS has no
19 control -- before conducting initial interviews of naturalization applicants. A number of
20 applicants, including Ghazal, remain among those whose initial examinations occurred
21 before the procedure to await FBI investigation results was strictly applied.

22 The district court technically can exercise jurisdiction over such cases where more
23 than 120 days have passed since the CIS' initial examination of the applicant but where the
24 processing of the citizenship application is stalled pending the results of the FBI's

---

[3] "A definitive response that a full criminal background check on an applicant has been completed **includes** [but is not necessarily limited to]: (1) Confirmation from the Federal Bureau of Investigation that an applicant does not have an administrative or criminal record; (2) Confirmation from the Federal Bureau of Investigation that an applicant has an administrative or criminal record; or (3) Confirmation from the Federal Bureau of Investigation that two properly prepared fingerprint cards (Form FC-258) have been determined unclassifiable for purpose of conducting a criminal background check and have been rejected." 8 C.F.R. § 335.2(b) (emphasis added).

investigations. See United States v. Hovsepian, 359 F.3d 1144, 1164 (9th Cir. 2004) (holding "Section 1447(b) allows the district court to obtain exclusive jurisdiction over those naturalization applications on which the INS fails to act within 120 days if the applicant properly invokes the court's authority"). Once jurisdiction is established, 8 U.S.C. § 1447(b) gives the court two options: hold a hearing and decide the matter, or remand the matter with appropriate instructions to the CIS for determination. Prudentially and practically, this court is persuaded to exercise its remand option when an applicant's background information is incomplete.

"Generally speaking, a court . . . should remand a case to an agency for decision of a matter that statutes place primarily in agency hands." INS v. Ventura, 537 U.S. 12, 16 (2002). In immigration matters, the executive branch is accorded great deference, as evidenced by the statutory and regulatory schemes established for processing citizenship applications. Neither the CIS nor the district court is sufficiently informed to decide an application until the FBI completes the required criminal background check to determine whether an applicant presents any national security or public safety risk, nor are they equipped to conduct such investigations themselves. See El-Daour v. Chertoff, 417 F.Supp.2d 679, 684 (W.D.Pa. 2005); Shalabi, 2006 WL 3032413 at *4. When the delay in the decision results from the FBI's investigative process, this court finds it is inappropriate to make a citizenship determination before that information is known, absent abusive or egregious circumstances not present on this record. See Khelifa, 433 F.Supp.2d at 843 ("[T]he courts have been unwilling to pursue either of these two courses [*i.e.,* either to conduct their own investigations into an applicant's criminal background, or to proceed to the merits of the application without the benefit of information concerning the applicants' backgrounds or security risks] where they could instead remand with instructions for the CIS to promptly decide the applications"). To do otherwise, "we would be improvidently bypassing the agency's expertise in immigration matters committed in the first instance to the agency." Lopez v. Ashcroft, 366 F.3d 799, 807 (9th Cir. 2004).

/ / /

1     Moreover, as "only the FBI and the CIS are in a position to know what resources are available to conduct the background checks and whether an expedited background check is feasible or efficient" in a particular case (<u>Shalabi</u>, 2006 WL 3032413 at *5), the court declines to impose particular deadlines for completion of the FBI checks or the naturalization decision. The court notes this decision does not deprive Ghazal of judicial review, because if his application is ultimately administratively denied, he may return to court for a *de novo* review. *See* 8 U.S.C. § 1421(c). The court would, at that time, have the benefit of a complete administrative record.

    For the foregoing reasons, **IT IS HEREBY ORDERED**:

    1.     Defendants' Motion To Remand is **GRANTED**.

    2.     This matter is **REMANDED** to CIS, with instructions that CIS make a determination as expeditiously as possible after the completion of Ghazal's security and background investigation.

    3.     The Clerk of Court shall terminate this action in its entirety.

**IT IS SO ORDERED**.

DATED: June 14, 2007

*[signature: Larry A. Burns]*

**HONORABLE LARRY ALAN BURNS**
United States District Judge